IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL McKENNA,                :     CIVIL ACTION
WILLIAM McKENNA, and            :
RAYMOND CARNATION               :
                                :
          v.                    :
                                :
CITY OF PHILADELPHIA            :     NOS. 98-5835, 99-1163


MEMORANDUM

McLaughlin, J.                                    July 15, 2009


          This is a civil rights action brought under Title VII,

42 U.S.C. § 2000e, et seq.  The plaintiffs, William McKenna,

Michael McKenna, and Raymond Carnation, are three white, former

Philadelphia police officers who allege that they were retaliated

against by the City of Philadelphia police department after they

complained about racially-discriminatory treatment of African-

American officers and after they filed claims of retaliation and

discrimination.  It was originally filed as two separate actions,

one by Michael McKenna, the other by William McKenna, Raymond

Carnation, and other since-dismissed plaintiffs.  The two cases

were subsequently consolidated for all purposes.

          The Court held an eight-day jury trial on the

plaintiffs' claims in May 2008.  The jury found against the

defendant City of Philadelphia (the "City") and in favor of the

plaintiffs and awarded damages in the amount of $2,000,000 for

Raymond Carnation, $3,000,000 for William McKenna, and $5,000,000

for Michael McKenna.  The City of Philadelphia has now moved to apply Title VII's statutory cap on damages, 42 U.S.C. § 1981a(b)(3), to the verdict.  The plaintiffs have cross-moved to avoid the statutory cap by seeking to have the verdict molded to award any damages in excess of the cap under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq., which does not have a statutory cap.

The Court will deny the plaintiffs' motion and will apply Title VII's statutory cap to the damages awarded at trial.


I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the late 1990's, plaintiffs William McKenna, Michael McKenna, and Raymond Carnation were Philadelphia police officers assigned to the 7-squad of the 25th District of the Philadelphia Police Department.

On November 4, 1998, Michael McKenna filed Case No. 98-5835 in this Court.  He subsequently filed an amended complaint on November 12, 1998, and a second amended complaint on May 24, 1999.  His suit brought claims for retaliation and discrimination under Title VII against the City of Philadelphia, and claims for retaliation under 42 U.S.C. § 1981 and claims for invasion of privacy under 42 U.S.C. § 1983 against the City and since-dismissed individual defendants.  None of his complaints contained a PHRA claim.

2

On March 5, 1999, plaintiffs William McKenna, Raymond Carnation, and several former plaintiffs filed a separate suit, Case No. 99-1163, in this Court.  These plaintiffs filed an amended complaint on June 29, 1999.  Their suit brought Title VII retaliation claims against the City, § 1981 retaliation and discrimination claims against the City and since-dismissed individual defendants, and § 1983 claims for deprivation of procedural and substantive due process against the City and the individual defendants.  The suit did not bring a PHRA claim.

The two cases were consolidated for discovery on May 4, 2000.

In May, 2001, all plaintiffs in Case No. 99-1163 except William McKenna and Raymond Carnation voluntarily dismissed their claims.  On May 29, 2001, plaintiff William McKenna moved to amend his complaint to add a claim for wrongful discharge under 42 U.S.C. §§ 1981 and 1983.  This motion was denied.

On January 17, 2003, after Michael McKenna, William McKenna, and Raymond Carnation had voluntarily dismissed their § 1981 claims and their claims against certain individual defendants, this Court granted summary judgment against them on the remaining claims.  All three plaintiffs appealed and the United States Court of Appeals for the Third Circuit reversed the grant of summary judgment in an opinion issued August 13, 2006. The decision found that the plaintiffs had presented sufficient

evidence to create a genuine issue of material fact as to whether they had suffered unlawful retaliation under Title VII and remanded the case for further proceedings.

After remand, the plaintiffs moved to amend their complaints to add § 1983 first amendment retaliation claims against individual defendants originally named in their complaints and to add claims of wrongful termination against the City and the individual defendants.  The plaintiffs' motion did not seek to add PHRA claims.  The Court denied the motion in a Memorandum and Order of May 15, 2007.  Docket No. 100 in Case 98-5835; Docket No. 121 in Case 99-1163.  In that Memorandum and Order, after reviewing the procedural history and briefing on appeal and the decision of the United States Court of Appeals for the Third Circuit, the Court interpreted the appellate decision as remanding only the plaintiffs' claims for retaliation under Title VII against the City.  The Court then denied the plaintiffs' motion to amend their complaints to add § 1983 first amendment retaliation claims against the individual defendants or add claims for wrongful termination.

The plaintiffs then filed an "omnibus" motion seeking alternatively to have the Court reconsider its May 15, 2007, ruling, to have the Court certify the issue for interlocutory appeal, or to have the Court stay the case so that the plaintiffs could file a writ of mandamus.  Neither the plaintiffs' initial

motion or memorandum of law, or their reply brief, mentioned the
PHRA.  The plaintiffs attached to their reply brief in support of
this motion a proposed "second amended complaint" in each case,
which they sought to file, if the Court granted reconsideration.
Although not mentioned in the plaintiff's briefing, these
proposed second amended complaints each contained a proposed new
claim under the PHRA.

The Court ruled on the "omnibus" motion in an Order
entered November 28, 2007.  Docket No. 104 in Case No. 98-5835,
Docket No. 125 in Case No. 99-1163.  The Court granted
reconsideration as to plaintiff Raymond Carnation's claims for
wrongful termination because the complaint in Case No. 99-1163
specifically mentioned his termination as one of the consequences
of the defendant's unlawful retaliation.  The Court therefore
ruled that Raymond Carnation could seek to recover damages for
his termination at trial.  The Court denied reconsideration of
all other aspects of its May 15, 2007, Memorandum and Order, and
denied the plaintiffs' motion to certify that order for
interlocutory appeal or stay the case pending the filing of a
writ of mandamus.

The plaintiffs then filed a second motion for
reconsideration on December 7, 2007, asking the Court to
reconsider its ruling that William and Michael McKenna's
terminations were not already a part of their claims.  The Court

denied this motion on December 12, 2007, and after a conference
with the parties, consolidated both cases for trial and set a
trial date for March 10, 2008.

The plaintiffs then filed a petition for writ of
mandamus and a motion for stay with the United States Court of
Appeals for the Third Circuit.  In January 2008, the parties
jointly moved before this Court for a stay of the trial date
because of the pending mandamus petition, stating that the
parties had been engaged in good-faith settlement negotiations,
but could not productively discuss settlement until it was known
whether William and Michael McKenna's terminations would be part
of the case to be tried.  The Court of Appeals denied the writ of
mandamus and trial was rescheduled for May 2008.

The Court held a jury trial in this matter from May 5
through May 14, 2008.  The plaintiffs did not seek to include a
proposed jury instruction on a PHRA claim in their proposed jury
instructions.  See Plaintiffs' Objections to the Defendant's
Proposed Jury Charge (Docket No. 130 in Case No. 98-5835; Docket
No. 148 in Case No. 99-1163).  At the charge conference, held
with counsel on the second-to-last day of the trial, the
plaintiffs moved under Federal Rule of Civil Procedure 15 to
amend the complaints in this action to add § 1983 claims based on
the First and Fourteenth Amendment and to include Title VII
disparate treatment and hostile work environment claims, but did

6

not move to add a claim under the PHRA.  The Court denied the plaintiffs' motion.  5/13/08 Tr. at 224-225.[1]  The instructions given to the jury included only one claim for each plaintiff under "a federal Civil Rights Statute," a retaliation claim under Title VII.  5/14/08 Tr. at 168.

The jury returned a verdict in favor of all three plaintiffs and awarded compensatory damages in the amount of $2,000,000 for Raymond Carnation, $3,000,000 for William McKenna, and $5,000,000 for Michael McKenna.  After the verdict, the Court stated on-the-record that it would not enter an immediate judgment on the verdict because the parties anticipated filing motions on the applicability of Title VII's statutory cap and the availability of front and back pay damages for Raymond Carnation. Id. at 220-21.

The City moved to apply Title VII's statutory cap to the plaintiffs' damages.  Docket Nos. 150 and 151 in Case No. 98-5835; Docket No. 169 in Case No. 99-1163; 5/28/09 Tr. at 10-11. The plaintiffs moved to mold the verdict to apportion any amount in excess of Title VII's statutory cap to a claim under the PHRA.

---

[1]  The only mention of the PHRA at the charge conference, was plaintiffs' counsel's request to include Michael and William McKenna's filing of charges with the PHRA as one of their protected activities for their Title VII retaliation claim.  The Court subsequently denied the request.  Raymond Carnation's filing of a PHRA claim was already included as one of his protected activities in the draft jury instructions under discussion at the charge conference.  5/13/09 Tr. at 202-11.

Docket No. 154 in Case No. 98-5835; Docket No. 171 in Case No. 99-1163.  The parties conducted limited discovery on front and back pay issues and the Court held an evidentiary hearing on the issue on May 18, 2009.  In a Memorandum and Order of July 7, 2009, the Court awarded Raymond Carnation $217,090 in back pay.

II.  DISCUSSION

 A.  Title VII's Statutory Cap

  In 1991, Congress amended the Civil Rights Act of 1964 to allow a successful plaintiff to recover compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  42 U.S.C. § 1981a(b)(3).  As part of the amendment allowing compensatory damages, the Civil Rights Act of 1991 imposes a cap on such damages based on the number of people employed by the defendant.  Id.; see also Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 847-48 (2001).  For an employer like the City with more than 500 employees, the statutory cap is $300,000.  42 U.S.C. § 1981a(b)(3)(D).

  The City has moved to impose the statutory cap on the plaintiffs' jury verdict.  The jury awarded compensatory damages under Title VII of $2,000,000 for Raymond Carnation, $3,000,000 for William McKenna, and $5,000,000 for Michael McKenna.  The

parties have not disputed that these verdicts are subject to the statutory cap.

B    Molding A Verdict to Apportion Damages to a PHRA Claim to Avoid Title VII's Statutory Cap

The plaintiffs have sought to avoid the effect of Title VII's statutory cap by having the Court mold the verdict to apportion any excess compensatory damages to a claim under the PHRA.  The PHRA is Pennsylvania's counterpart to federal anti-discrimination law and, in most respects, a claim under the PHRA is analyzed identically to a claim under Title VII.  Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001).  One way in which the PHRA and Title VII differ is that the PHRA does not include a cap on compensatory damages. Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 570 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has held that, in appropriate circumstances, a district court may apportion compensatory damages in excess of the federal statutory cap to an uncapped PHRA claim in order to maximize the recovery to the plaintiff.  Gagliardo, 311 F.3d at 570-72.  In Gagliardo, a plaintiff brought both a PHRA claim and federal Americans with Disabilities Act ("ADA") claim, subject to the statutory cap of 42 U.S.C. § 1981a(b).  Both claims were tried to verdict and the jury awarded the plaintiff $2,000,000 in

9

compensatory damages and $500,000 in punitive damages without apportioning damages between the two statutes.  The defendant moved to apply the statutory cap, but the district court granted the motion only in part, reducing the plaintiff's punitive damage to the $300,000 amount of the federal statutory cap and apportioning the entire $2,000,000 awarded in compensatory damages to the plaintiff's uncapped PHRA claim.  On appeal, the United States Court of Appeals for the Third Circuit upheld the apportionment, holding that the statutory cap of § 1981a "does not prohibit apportionment of damages between claims, one under a capped federal statute and another under a corresponding uncapped state statute, so that the verdict winner gets the maximum amount of the jury award that is legally available."  Id., 311 F.3d at 572.

C    The Plaintiffs Did Not Bring a PHRA Claim and Must Amend Their Pleadings Before Seeking to Mold the Verdict

This case differs from Gagliardi in one significant respect.  In Gagliardi, the plaintiff pled both a federal civil rights claim and a state PHRA claim and tried both claims to a jury verdict.  In this case, the plaintiffs did not plead a PHRA claim and only their federal Title VII retaliation claim was tried to the jury.

10

The plaintiffs have attempted to address the lack of a
PHRA claim in their case in two ways.  The plaintiffs' initial
motion to mold the jury verdict argued that the Court could
apportion damages to a PHRA claim without amending the
plaintiffs' pleadings to add a PHRA claim.  The plaintiffs
specifically explained that they were not seeking to amend their
pleadings to add a new claim to the case, but were instead
seeking to have the Court apportion damages to a PHRA claim that
they contended was already in the case tried to the jury:

> PLAINTIFFS ARE NOT ADDING A NEW CLAIM . . .
> The Plaintiff[s'] motion does not require a
> new claim; rather the motion seeks to allow
> state damages permitted for the claim that
> was raised.  The claim here was retaliation
> for opposing discrimination in employment,
> which claim is one and only one that can be
> brought under law.  Two laws allow the same
> claim to be raised.  These laws are
> 'coexisting.' . . . The Plaintiffs['] claim
> is but one and covered under coexisting laws;
> the coexisting state law is the Pennsylvania
> Human Relations Act . . .

Docket No. 174 in Case No. 98-5835, No. 191 in Case No. 99-1163
at 6.  In subsequent filings, the plaintiffs have clarified that
they believe that their federal remedies under Title VII include
any damages that could be awarded under state law, and therefore
their Title VII damages should include whatever uncapped damages
could be awarded under the PHRA:

> The issue before the Court . . . is to mold
> the judgment and award under Federal law the
> remedies allowed under federal law, which is
> all remedies allowed.  Here, federal law

> allows state remedies to be awarded.  Here,
> state remedies have no cap under the State
> Pennsylvania Human Relations Act.

Docket No. 233 in Case No. 98-5835, No. 252 in Case No. 99-1163, at 2.

At the same time that the plaintiffs contend that they do not need to amend their pleadings in order to apportion their damages to a PHRA claim, they also contend that they have previously moved to amend their complaint to add a PHRA claim and have sought to renew that motion.  In October 31, 2008, briefing concerning the extent and progress of post-verdict discovery into Raymond Carnation's equitable damage claims, the plaintiffs stated that they had previously moved to amend their pleadings to add a PHRA claim and asked that the Court reconsider its denial of leave to amend.  Docket No. 193 in Case No. 98-5835, No. 210 in Case No. 99-1163, at 11.  The Court denied that motion to reconsider in an Order of December 18, 2008.  In subsequent briefing, the plaintiffs claim that they have moved before, during, and after trial for leave to amend to add a PHRA claim.  They argue that the requirements for amendment are met because adding a PHRA claim would cause no prejudice or delay and would not be futile.  Docket No. 233 in Case No. 98-5835, No. 252 in Case No. 99-1163, at 4.

The Court rejects the plaintiffs' suggestion that it can apportion damages to a PHRA claim without the plaintiffs'

successfully moving to amend their pleadings to add such a claim.
The plaintiffs' complaints in this matter have never included a
PHRA claim.  The only claims tried to the jury were the
plaintiffs' claims of retaliation under Title VII.  The
plaintiffs' argument that their remedies under Title VII include
or subsume their remedies under the PHRA is unsupportable.
Compensatory and punitive damages under Title VII are available
only through 42 U.S.C. § 1983a, which expressly caps those
damages.  Nothing in the statutory language of § 1983a
incorporates state law remedies.

Although, under Gagliardi, a district court has the
discretion to apportion a compensatory damage verdict between
Title VII and PHRA claims to maximize a plaintiff's recovery,
that decision presumes the existence of a PHRA claim validly pled
and tried to a favorable verdict.  Where, as here, the plaintiffs
have not pled a PHRA claim or tried it to verdict, there is no
PHRA claim upon which to apportion damages.  The Court therefore
finds that, before the plaintiffs can seek to apportion their
compensatory damage award to a PHRA claim, they must first amend
their pleadings to include such a claim.

In their briefing, the plaintiffs state that they have
previously moved to amend their pleadings to add a PHRA claim
prior to trial, at the conclusion of trial, and in a post-verdict

Rule 15 motion.[2]  The Court's own review of the pleadings and
dockets in this case does not show that these motions were made.
As set out in the procedural history above, the plaintiffs moved
on several occasions before trial to add § 1983 and wrongful
termination claims to this case, but never expressly sought to
add a PHRA claim.[3]  The transcript of the charge conference at
the end of trial shows that the plaintiffs made a Rule 15 motion
to add § 1983 and termination claims, but did not move to add a
PHRA claim.  Similarly, the plaintiffs' post-verdict motion to
mold the verdict to a PHRA claim specifically disclaims any
intention to amend the pleadings and add a new claim.  The only
express motion by the plaintiffs to amend their pleadings and add
a PHRA claim is their October 31, 2008, motion for
reconsideration, which the Court denied in December 2008.

        Given the numerous filings in this case, and the
tendency of the parties to raise numerous issues in a single

---

        [2]     "Plaintiffs, prior to trial[,] requested leave to
[a]mend to add a P[HRA] claim; they raised a Rule 15 motion at
the conclusion of trial to do the same[;] and they also post[-
]verdict moved under Rule 15 to [a]mend the action to allow an
award under the [PHRA]."  Docket No. 233 in Case No. 98-5835, No.
252 in Case No. 99-1163, at 4.

        [3]     Although a proposed "second amended complaint,"
attached to a reply brief for one of these motions, did include a
PHRA claim, this added claim was never mentioned in the
plaintiffs' briefing or addressed by the defendant and was
therefore not fairly presented to the Court.  The Court granted
and denied the motion in part, denying the motion to file the
"second amended complaint," but allowing plaintiff Raymond
Carnation to recover equitable damages.

filing, it is possible that the Court has overlooked a request by the plaintiffs to amend their complaint to add a PHRA claim (the plaintiffs having not identified any such filing by docket number).  Although there does not appear to be any pending motion by the plaintiffs to amend their pleadings to add a PHRA claim, the Court will nonetheless consider whether such a post-verdict amendment would be permissible.

> D   The Plaintiffs Cannot Amend Their Pleadings Now to Add a PHRA Claim

The City, which has consistently taken the position that the verdict cannot be molded to a PHRA claim unless the plaintiffs amend their pleadings, argues that leave to amend to add a PHRA claim cannot be granted for two reasons:  1) delay and prejudice and 2) futility.  The City's futility argument is based on the plaintiffs' alleged failure to properly exhaust their administrative remedies before the Pennsylvania Human Rights Commission, as required to bring a PHRA claim.  The Court will not reach the City's futility argument, finding that any amendment of the pleadings to add a PHRA claim would have to be denied on grounds of undue prejudice.

Any motion to amend the pleadings at this point must satisfy Federal Rule of Civil Procedure 15(b), which governs amendments during or after trial.  Under Rule 15(b), an amendment may be permitted in two circumstances:  1) where a party objects

15

to evidence that is not within the issues raised by the pleadings, in which case a court may permit the pleadings to be amended if doing so would not prejudice the objecting party, and 2) where an issue is not raised in the pleadings, but tried by the parties' express or implied consent, in which case it must be treated as if included in the pleadings. Fed. R. Civ. P. 15(b); 6A Charles A. Wright, et al., Federal Practice & Procedure § 1491 (2009).

Here, because a Title VII claim and a PHRA claim have essentially identical elements, the City did not object to any evidence at trial as relevant only to a PHRA claim and therefore beyond the scope of the pleadings. The first type of Rule 15(b) amendment is therefore inapplicable here.

Under the second type of Rule 15(b) amendment, a court may "permit amendments to conform to the evidence only if an issue has been tried with the express or implied consent of the parties and the opposing party will not thereby be prejudiced." Evans Prods. Co. v. W. Am. Ins. Co., 736 F.2d 920, 924 (3d Cir. 1984). A finding of implied consent depends upon "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." Douglas v. Owens, 50 F.3d 1226, 1236 (3d Cir. 1995)

16

(quotation and internal quotation marks omitted).  In any decision to amend, the "primary consideration . . . is prejudice to the opposing party."  <u>Evans</u>, 736 F.2d at 924.

The parties did not expressly or implicitly consent to try a PHRA claim in this case.  Neither of the parties' proposed jury instructions requested the inclusion of a PHRA claim, nor was the possibility of raising such a claim discussed in the parties' pretrial memoranda or at the pretrial conference.  The instructions given the jury referred only to the plaintiffs' federal Title VII claim.  In the absence of either express or implied consent to try a PHRA claim, any amendment to add such a claim must be denied.  <u>Douglas</u>, 50 F.3d at 1236 ("'[I]f the issue . . . has not been tried with the consent of the parties, then an amendment to conform to the pleadings will not be permitted no matter when made.'") (quoting Wright § 1493).

The Court also finds that permitting the plaintiffs to amend their pleadings to add a PHRA claim would severely prejudice the City.  From the filing of the plaintiffs' complaints in 1998 and 1999 through to the present, this action has never included a PHRA claim.  From at least May 16, 2007, when the Court issued a Memorandum and Order setting out the issues remaining for trial after the decision of the United States Court of Appeals for the Third Circuit, the only claims remaining in this case have been plaintiffs' Title VII claims for

17

retaliation, which are subject to the statutory cap.  The City relied on this fact in planning its litigation and settlement strategy for the case.  In January 2008, when the parties jointly requested a postponement of trial, the parties stated that they had been engaged in good-faith settlement negotiations, but that the "question of which types of damages the plaintiffs can recover will have a significant impact upon the settlement value of the plaintiffs' claims."  Docket No. 111 in 98-5835, Docket No. 132 in Case No. 99-1163.  Allowing the plaintiffs to amend their complaint now, after verdict, to add a claim not governed by the statutory cap, after the parties litigated and tried this case as if it included only a Title VII claim governed by the cap, would prejudice the City.

Because there is no PHRA claim in the parties' pleadings and because the plaintiffs cannot now amend their complaint to add such a claim, the Court cannot mold the plaintiffs' verdict to apportion damages and avoid Title VII's statutory cap.  Because the only claim in this case is plaintiffs' Title VII retaliation claim, the statutory cap of 42 U.S.C. § 1981a(b)(3) applies to the jury verdict in their favor and will limit the judgment that can be entered on that verdict to $300,000 per plaintiff.

An appropriate Order will be issued separately.

18